UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


JOHNNY NORVILLE,                      )
                                      )
                Petitioner,           )
                                      )
          v.                          )          No. 4:03 CV 1276 DDN
                                      )
JIM MOORE,                            )
                                      )
                Respondent.           )

## MEMORANDUM

This matter is before the court upon the petition of Missouri state prisoner Johnny Norville for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).


## I.  Background

On February 23, 1999, petitioner was convicted by a jury in the Circuit Court of New Madrid County on one count of possession of a controlled substance. (Doc. 8, Ex. B at 62.) Petitioner was sentenced to a term of twelve years, to be served consecutively with sentences previously imposed by the Circuit Court of Mississippi County. (Id. at 88.) He appealed from the judgment of conviction to the Missouri Court of Appeals. (Id. at 91.) The judgment was affirmed on May 24, 2000. (Doc. 8, Ex. F at 1.) The Court of Appeals denied petitioner's request for rehearing or transfer to the Supreme Court of Missouri on June 15, 2000. (Doc. 8, Ex. G.) The Court issued its mandate on September 1, 2000. (Doc. 8, Ex. J at 128.) See State v. Norville, 23 S.W.3d 673 (Mo. Ct. App. 2000). The Supreme Court of Missouri denied transfer on August 29, 2000. (Doc. 8, Ex. H.)

Petitioner then filed a motion for post-conviction relief, pursuant to Missouri Supreme Court Rule 29.15, in the New Madrid County Circuit Court on November 16, 2000. (Doc. 8, Ex. J at 3.) The grounds raised were ineffective assistance of counsel, prosecutorial misconduct, plain error, and abuse of discretion. (Id. at 11-23.) The motion was denied

on August 20, 2001, after an evidentiary hearing. (__Id.__ at 127.) Petitioner appealed to the Missouri Court of Appeals. (Doc. 8, Ex. M at 1.) The denial of post-conviction relief was affirmed. (__Id.__) He commenced this habeas action in the United States District Court for the Western District of Missouri. The action was transferred to this court and filed on September 8, 2003.

Petitioner asserts the following grounds for relief:

1) The trial court erred in overruling petitioner's motion for judgment of acquittal and in sentencing him upon his conviction.

2) The trial court erred in sustaining the state's objection to petitioner's evidence that Brice Owens told his sister, Jamie Owens, and a friend, Dale Crump, that Brice framed petitioner by planting drugs and drug related items in and around petitioner's residence.

3) The trial court erred in sustaining the state's objections to impeaching testimony from Jamie Owens and Dale Crump that Jim Owens told them he framed petitioner with the help of Brice.

4) The trial court failed to place on the record, and take remedial action against, the repeated violations of the Witness Protective Order and the Rule on Witnesses.

5) The trial court erred in letting the state present copious evidence concerning the methamphetamine manufacturing process, how methamphetamine is made, how methamphetamine labs are cleaned up, and how much it costs the county to clean up these labs.

6) The trial court erred in sustaining the state's objection to a memo written by the prosecutor, to impeach the testimony of law enforcement officers. In addition, the court erred by not sua sponte requiring the prosecution to correct the false testimony given by law enforcement officers at trial.

7) The trial court erred by letting the state argue in summation: "[petitioner] seems to come up with every answer possible as to all the evidence. How can he do that? Because he's had all this time to make up his story as to every fact and every evidence the State has."

8) The trial court erred in letting the state introduce evidence that on the night of his arrest, petitioner had long hair, tarnished looking clothes, and a very scraggly appearance, because petitioner's appearance at the time of arrest was irrelevant to any issue at trial and was more prejudicial than probative.

9) Petitioner was denied effective assistance of counsel when his trial counsel failed to object to the admission into evidence of the search inventory and photographs taken during the search, and petitioner was further denied effective assistance of counsel when his appellate counsel failed to assert on direct appeal the court's error in admitting the exhibits into evidence.

10) Petitioner was denied effective assistance of counsel when his trial counsel failed to properly impeach Deputy Keith Moore, given that the State's case was based significantly on Deputy Moore's investigation and testimony, and such impeachment would have cast doubt on his credibility.

11) Deputy Moore's affidavit in support of a search warrant contained numerous false statements, which were knowingly and intentionally included in the affidavit.

(Doc. 4, Attach. at 1-13.)

The Missouri Court of Appeals recounted the facts demonstrated at petitioner's trial as follows:

Viewed in a light most favorable to the verdict, we observe that on the night of February 10, 1998, Mississippi County law enforcement officers executed a search warrant at Defendant's mobile home, located just outside of East Prairie, Missouri. The officers forced open the door to the mobile home when no one responded to their knocks. Sharon Moore ("Sharon"), Defendant's fiancée and live-in, was apprehended in the hallway inside the front door and Defendant was apprehended in a bedroom. Sheriff Turley was the first law enforcement officer to enter the bedroom. He testified that Defendant was "sitting at a little counter, or something. He had his back to me." Sheriff Turley related that when he yelled for Defendant to get on the floor, Defendant whirled around wielding a lock-blade knife "and squared off with a wild look." Sheriff Turley testified that Defendant looked "[j]ust wild. Just wild-eyed looking. Just like he was in a different world." He reported that Defendant dropped the knife after a couple of seconds and was taken into custody.

On the counter in the bedroom of Defendant's mobile home, officers found two clear plastic bags containing a

white substance that was later determined to be methamphetamine. One of the bags was open. The officers also seized a piece of aluminum foil, a coffee filter and a plastic cup, all later found to contain methamphetamine residue.[FN2]  Additionally, a jar filled with a liquid red substance was found outside the mobile home near the porch.

> FN2. The officers further seized twelve gauge shotgun shells, a spoon, a razor blade, twenty-five milligrams of aphedrine, plastic tubing, the empty tube of an ink pen, a syringe with a needle, a set of scales, an auto-rolling device, and a bottle of "liquid fire."

Defendant's primary defense at trial was that he had been "framed."  He contended that the methamphetamine had been planted by Sharon's son, Brice Owens ("Brice"), in collusion with Sharon's ex-husband, Jim Owens ("Jim"), Brice's father.  It was Defendant's contention that both men felt a great deal of animosity toward him.

As more fully set out *infra,* Brice's statements to law enforcement officials prior to the raid on Defendant's home and his purported statements made to third parties after Defendant's and Sharon's arrests, together with his testimonies at the suppression hearing and at trial, were at times contradictory and equivocal.  At the suppression hearing and at trial, Chief Deputy Keith Moore testified that Brice had been a reliable confidential informant for the Sheriff's Office in the past, and acknowledged that on February 6, 1998, Brice had informed Deputy Moore both that he had seen "a gram or two of methamphetamine in Sharon and Johnny's trailer" and that Defendant was "going to manufacture some methamphetamine" the following weekend. Deputy Moore acknowledged that he obtained a search warrant to search Defendant and Sharon's mobile home on the basis of this information.

At trial, Brice testified that "[Defendant] is totally innocent.  I just want to go ahead and let everybody know that I was the one that done this."  He further related that "I had a buddy of mine, I'm not gonna say no names who, but I had him to put the jar on the outside of the trailer, I left the dope at the house."  He then acknowledged that by "dope" he meant methamphetamine and that he had left the drugs "in a bathroom, on the sink."  Brice stated that he "cooked" some methamphetamine outside Jim's tire shop and rode over to Defendant's and Sharon's mobile home using his nephew's four-wheeler.  Additionally, he set out that he told Chief Deputy Moore that he had "seen some dope out there" in Defendant's mobile home.

On cross-examination at trial, when asked when he cooked the methamphetamine, he testified that he cooked it "[t]he day of the bust, whatever day that was." [FN3] The following exchange took place between Brice and the prosecutor:

> FN3. The record shows that the search warrant was obtained on February 6, 1998, a Friday, and the raid, i.e., the date of the "bust," was Tuesday, February 10, 1998.

Q: [Prosecutor] Did you not give [Chief Deputy Moore] information on February the 6th, is that the day that they cooked the dope up in order for him to get a search warrant; is that the day that you called him and told him that there would be dope delivery?

A: [Brice] Yes.

Later, Brice testified as follows:

Q: [Prosecutor] And there has already been evidence in this trial, Brice, that the search warrant that he, he got a warrant for February the 6th, 1998; do you know that?

A: [Brice] Yes.

Q: So that would have been the date that you would have given him the information to get his search warrant?

A: Yes.

Q: Could you have also cooked dope other than just once that week?

A: No, sir.

On cross-examination Brice reiterated that he left "a couple grams of methamphetamine ... no bigger than the end of my pinky there ... on the kitchen sink" in two bags, but did not tell Defendant he had done so.

State v. Norville, 23 S.W.3d at 675-77.


## II. Exhaustion of State Remedies and Procedural Bar

In order to obtain habeas review under 28 U.S.C. § 2254, petitioner must exhaust available state remedies for each ground he intends to present to the federal court. Coleman v. Thompson, 501 U.S. 722, 731 (1991). State prisoners must give the state courts one full opportunity

to resolve any constitutional issues by invoking one complete round of the state's established hearing and appellate review process in order to proceed on a federal habeas corpus claim. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). If the petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal habeas review of the claims is procedurally barred. <u>Coleman</u>, 501 U.S. at 750.

For a petitioner to overcome the procedural bar, he must show "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Id.</u> A showing of actual innocence would be a fundamental miscarriage of justice. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995). However, such a claim requires petitioner "to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." <u>Id.</u> Petitioner must show that "a constitutional violation has *probably* resulted in the conviction of one who is actually innocent." <u>Id.</u> at 327 (emphasis added) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). In order to do this, petitioner must establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." <u>Schlup</u>, 513 U.S. at 327.

**Ground 4**

In Ground 4 petitioner contends that he was denied due process when the trial court failed to place on the record and take remedial action against the state's repeated violations of the Witness Protective Order and the Rule On Witnesses. Respondent argues that Ground 4 is procedurally barred.

The independent and adequate state law that petitioner failed to follow is Missouri Supreme Court Rule 29.15. Rule 29.15(c) allows for the appointment of counsel for indigent movants in their post-conviction litigation. Under Rule 29.15(g), appointed counsel is allowed to file an amended motion within 60 days of the date when both a complete transcript has been filed in the trial court and counsel is appointed. Also, the court may extend the time for filing the amended motion for

one additional period not to exceed 30 days.  Lastly, the rule states "that the movant waives any claim for relief known to the movant that is not listed in the motion."  Rule 29.15(d).  "The time limits of Rule 29.15 are valid and mandatory."  Kilgore v. State, 791 S.W.2d 393, 395 (Mo. 1990) (en banc) (citations omitted).  "The remedy under 29.15 exists only within the time limit specified."  Id.

In this case, the appellate court issued its mandate in petitioner's direct appeal on September 1, 2000.  Petitioner filed his pro se motion for post-conviction relief on November 16, 2000, and counsel was appointed on that date.  (Doc. 8, Ex. J at 3.)  The court granted the 30 day extension for filing the amended motion, and that motion was filed on February 13, 2001.  (Id. at 98.)  However, petitioner then filed a pro se "Supplement Motion to: Amended Motion to Vacate, Set Aside or Correct, Judgment and Sentence."  (Id. at 113.) This supplemental motion was filed on July 5, 2001, more than 90 days after the court issued its mandate.  As such, the supplemental motion was untimely.

The Missouri Court of Appeals dismissed this federal Ground 4 because it had no jurisdiction to review the matter on the merits. (Doc. 8, Ex. M at 2-3.)  Since this claim was defaulted pursuant to an independent and adequate state procedural rule, this court cannot consider it unless petitioner can show:  (1) legally sufficient cause for the default and actual prejudice as a result, or (2) that the failure to consider Ground 4 will result in a fundamental miscarriage of justice.

Petitioner stated in his "Supplement Motion" that "movant does not agree to waive forthcoming claims which were not previously listed in Counsel[']s amended motion."  (Doc. 8, Ex. J at 113.)  Although petitioner indicates he did not agree with counsel's amended motion, he does not show adequate cause to overcome the procedural bar.  Since petitioner does not show cause, it is not necessary to consider the question of prejudice, because both cause and prejudice must be established.  See Coleman, 501 U.S. at 750-51.

Petitioner further alleges that he should overcome the procedural bar because he is actually innocent.  He contends that in his "Request

for Evidentiary Hearing With Appointment of Counsel" he presented "new evidence" in the form of letters to petitioner, written by Brice Owens. (Doc. 11). In these letters, petitioner has referenced several passages. These passages are as follows:

> Reference 1: "Johnny, I know my half truths as you call it has got your life all screwed up. I wish things were different too. I hate Keith Moore for all of this. I hate everything that low-life . . . stands for. But even with all that, I still can't see even if everything came out that it would change anything." (Expletive deleted)

> Reference 2: "I mean, what do you say to a man who's life you helped destroy?"

> Reference 3: "I don't even remember saying anything about leaving the dope in the kitchen? I was so . . . nervous from trying to help you and keep Keith . . . outta trouble that I let Paul B[oyd] trip me all up." (Expletives deleted)

> Reference 4: "Keith and Charlie came to the shop on several occasions and talked to me about you before anything ever went down. Johnny, I was so hooked on the dope and cooking that that's all I cared about at the time. They made me believe that if mom stayed with you she wouldn't live very long. Also they told me and dad you come out of prison and had AIDS! I was young and very stupid Johnny. Remember when I whooped Holly real bad and came out yours and moms? I got a felony out of that. They scared me with that too. Made me think I was going to prison, and if I helped them I'd get probation."

> Reference 5: "Oh yeah, Keith Moore knew where and when I cooked that. He knew when I was doing it. He even let me ride Justin's four-wheeler out MRM and get the juice."

(Doc. 11, Attach. unnumbered at 5-8.)

Petitioner argues that these letters imply that Brice feels remorse for planting evidence to incriminate petitioner. However, they do not establish that petitioner is actually innocent of the crime of possession of a controlled substance. Further, the possibility that Brice planted the drugs was presented at trial and considered by the jury. (Doc. 8, Ex. A3 at 395-96, 398-401.) This is not new evidence.

Ground 4 is procedurally barred.

### III.  Discussion on the Merits

**A.  Standard of Review**

Federal habeas relief will not be granted on a claim that has been decided on the merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Further, a state court's determination of a factual issue is presumed to be correct and must be rebutted by clear and convincing evidence.  § 2254(e)(1).

"A state court's decision [on the merits of a claim] is contrary to clearly established law 'if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case.'" Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999), cert. denied, 531 U.S. 886 (2000).  When deciding if the state court's decision was based on an unreasonable determination of the facts, the federal habeas court must look to see whether the decision was *objectively* unreasonable.  Williams v. Taylor, 529 U.S. 362, 365 (2000) (plurality opinion).  The federal habeas court "may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id.

**B.  Due Process Claims - Grounds 1, 2 and 3**

**Ground 1**

Petitioner claims he was denied a fair trial and due process when the trial court overruled his motion for judgment of acquittal and sentenced him upon conviction.  Respondent argues that petitioner fails

to demonstrate that the trial court's findings are contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Petitioner moved for judgment of acquittal at the close of the state's evidence and again at the close of all the evidence. (Doc. 8, Ex. B at 44-47.) The grounds for both motions were: the state failed to prove the elements of the crime alleged in the information; the evidence failed to establish the corpus delicti; the evidence failed to establish that the alleged offense, if any, was committed by the petitioner and that petitioner possessed the requisite mental state; accepting as true all the evidence, whether circumstantial or direct, together with all favorable inferences drawn therefrom, the evidence is insufficient as a matter of law to support a finding of guilt; the evidence is in such conflict in material respects that it fails to establish guilt beyond a reasonable doubt; the information charging document does not state facts sufficient to constitute an offense against the State of Missouri; and the state has failed to establish by proof which meets the requirements for submission to the jury in a criminal case that the petitioner committed the alleged offense with the requisite mental state. (Id.) The trial judge overruled the motions and sentenced petitioner. ( Id. at 88.)

All but one specification of error in Ground One impugns the legal sufficiency of the evidence to sustain the conviction. When determining the sufficiency of evidence, the federal habeas court follows the standard set down by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the habeas court views the evidence "in the light most favorable to the prosecution" and asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Also, the Supreme Court has held that under the Jackson standard, the credibility of witnesses is for the jury to decide and should not be disturbed by a reviewing court. See Schlup v. Delo, 513 U.S. at 330.

In petitioner's case, the Missouri Court of Appeals followed a similar standard regarding sufficiency of the evidence: "[r]eview of the sufficiency of evidence is limited to determination of whether the

evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt." Norville, 23 S.W.3d at 676 (quoting State v. Powell, 973 S.W.2d 556, 558 (Mo. Ct. App. 1998)). "Credibility of witnesses and inconsistencies in testimony are for the jury to consider." Id.

In order for the jury to have found petitioner guilty, it must have been convinced, beyond a reasonable doubt, that he possessed a controlled substance. Under Missouri law, "it is unlawful for any person to possess or have under his control a controlled substance." Mo. Rev. Stat. § 195.202. To prove the elements of this offense, "the State must prove (1) conscious and intentional possession of [a controlled] substance, either actual or constructive, and (2) awareness of the presence and nature of this substance." Powell, 987 S.W.2d at 558. "The State is not required to show actual, physical possession of the substance to establish possession, but may show constructive possession by circumstantial evidence." Id. Where there is joint control of the area where the contraband is found, the state must present further evidence to connect a defendant with the drugs. State v. Sours, 946 S.W.2d 747, 752 (Mo. App. 1997). Such additional evidence could be "routine access to an area where controlled substances are found" or "a mixture of defendant's personal belongings with the substance." Id.

While petitioner contends that there was no mixture of his personal belongings with the controlled substance, the record shows he had routine access to the area where the drugs were found. The record shows that petitioner and Sharon Moore both occupied the residence and shared the bedroom. The state presented evidence that petitioner was apprehended in the bedroom where the controlled substance was found. (Doc. 8, Ex. A2 at 249, 285-95; Ex. A3 at 309, 352, 367-69.) This evidence satisfies the requirement that petitioner have "routine access to the area where the controlled substance was found."

Petitioner further contends that the trial court should have granted his motion for acquittal, because Brice confessed to planting the drugs. Because the testimony and credibility of a witness is for the jury to determine, the trial court was not required to grant his

motion for acquittal.  The jury considered all the testimony and evidence, and it believed that petitioner possessed methamphetamine.

Petitioner states, as a supporting fact for this claim, that the trial court erred when it did not answer the jury's questions regarding trial testimony during its deliberation.  The decision to read testimony back to the jury is within the sound discretion of the trial judge.  United States v. Peltier, 585 F.2d 314, 334 (8th Cir. 1978).  The habeas court may review the record to see if there was a denial of due process.  See Peltier, 585 F.2d at 334.  However, the habeas court rarely disrupts the trial judge's decision, absent some extraordinary showing of need or a showing that the testimony was crucial to the verdict.   See id.

Here, the trial court properly considered the jury's question–-the court marked the jury's question as "Court's Exhibit Number 1," read it on the record, and gave counsel for both sides the opportunity to object to the court's response.  The trial judge decided, in his sound discretion, that the jury should remember the evidence. (Doc. 8, Ex. A5 at 688-89.)

Because there was sufficient evidence for a rational trier of fact to find petitioner guilty beyond a reasonable doubt, because the credibility of witnesses is a finding of fact for the jury to decide, and because the trial court did not abuse its discretion by refusing to answer the jury's questions, Ground 1 is without merit.

The claim of constitutional insufficiency of the information are without merit.  The information gave petitioner adequate notice of the charge against him so that he could defend himself.[1]  See U.S. Const. amends. VI and XIV; Cole v. Arkansas, 333 U.S. 196, 201 (1948).

---

[1]The information charged:

PAUL R. BOYD, Special Assistant Prosecuting Attorney, of MISSISSIPPI County, Missouri, charges that the Defendant, in violation of Section 195.202, RSMo, committed the class C felony possession of a controlled substance, punishable upon conviction under Sections 558.011.1(3) and 560.016, RSMo, in that on or about 02-11-98, in the County of MISSISSIPPI, State of Missouri, the defendant possessed methamphetamine, a controlled substance, knowing of its presence and illegal nature.

**Ground 2**

Petitioner claims he was denied a fair trial and due process when the trial court sustained the state's objection and refused to let him present evidence that Brice Owens told his sister, Jamie Owens, and a friend, Dale Crump, that Brice framed petitioner by planting drugs and drug related items in and around petitioner's residence. Respondent argues that the determination of the Missouri Court of Appeals on this claim was reasonable.

The federal constitutional standard for admitting hearsay statements was set out in Chambers v. Mississippi, 410 U.S. 284 (1973). The Supreme Court noted the purpose and validity of the hearsay rule:

> Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

Id. at 298. The Court held that where the indicia of reliability existed and the declarant's statements, if true, would exonerate the accused, the hearsay statements could not be excluded. The Court limited this holding to the facts and circumstances of the Chambers case. Id. at 302-03.

In Chambers, the petitioner appealed his conviction of murder. Id. at 285. Another person, McDonald, confessed to the murder, but later repudiated his confession. Id. at 287-88. Subsequently, to three separate people, on three separate occasions, McDonald confessed to the murders. Id. at 289. The petitioner called McDonald as a witness at the trial, but McDonald repeated his repudiation and story of his whereabouts the night of the murder. Id. at 291. Petitioner was not able to then cross-examine McDonald (because of an outdated rule)and the court refused to allow petitioner to introduce the testimony of the friends to whom McDonald had confessed. Id. The Supreme Court found:

> The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability. First, each of McDonald's confessions

- 13 -

was made spontaneously to a close acquaintance shortly after the murder had occurred.  Second, each one was corroborated by some other evidence in the case – McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon.  The sheer number of independent confessions provided additional corroboration for each.  Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest . . . .  Finally, if there was any question about the truthfulness of the extrajudicial statements, McDonald was present in the courtroom and was under oath.  He could have been cross-examined by the State, and his demeanor and responses weighed by the jury.

Id. at 300-01.

The Court further held the testimony rejected by the trial court was "critical to Chambers' defense."  Id. at 302.  In circumstances where the indicia of reliability are present, the rejected testimony was "critical," and "where constitutional rights directly affecting the ascertainment of guilt are implicated," "the hearsay rule may not be applied mechanistically to defeat the ends of justice."  Id.

Generally, Missouri courts do not admit into evidence declarations against penal interests made by unavailable witnesses as an exception to the hearsay rule.  State v. Blankenship, 830 S.W.2d 1, 6 (Mo. 1992) (en banc).  The only exception is that set forth in Chambers.  Id.  The [Missouri] "Supreme Court recognized Chambers in State v. Turner, 623 S.W.2d 4 (Mo. 1981) (en banc)."  State v. Williams, 958 S.W.2d 87, 90 (Mo. App. 1997).  The Turner court cautioned against extending Chambers beyond its facts because of the "questionable reliability inherent in extrajudicial confessions made by a non-party."  Id. at 90-91.

In petitioner's case, the Missouri Court of Appeals upheld the trial court's decision to reject the hearsay testimony.  The court stated:

While we determine that in pursuit of the truth in this particular instance, it would have been a wiser policy for the trial court to have allowed the testimonies of Dale and Jamie, nevertheless, we cannot say, given the particular facts of this case, that the trial court abused its discretion in not permitting the proffered

- 14 -

rehabilitating testimonies. This is because Brice's
statements made to Dale and Jamie were inherently not free
of the "'corrupting influence' to falsify." *Ramsey*, 864
S.W.2d at 329. His statements to these third parties were
made *after* the arrest of Sharon and Defendant. Under the
*raison d'etre* justifying the presentation to the jury of
consistent statements for purposes of rehabilitation after
impeachment, *see Ramsey supra*, Brice could very well have
had a motive to falsify his remarks at this point in time.
Indeed, his remarks inculpating Defendant, made to Deputy
Cook on or about February 6, 1998, and prior to the
arrests of Defendant and Sharon, more closely mirror the
appearance of being free of a "corrupting influence to
falsify." Given the particular circumstances of this
case, we cannot hold that the trial court's actions were
so prejudicial as to deprive Defendant of a fair trial.

State v. Norville, 23 S.W.3d at 679.

Respondent cited the above passage as the Court of Appeals'
reasonable determination that the hearsay statements lacked "indicia of
reliability." (Doc. 8 at 11-12.) However, the state court addressed
the factors for indicia of reliability similar to those set forth in
Chambers and in effect determined that the subject testimony was not
critical to the petitioner's defense.

First, the hearsay statements were not reliably self-incriminatory
and against the penal interest. The disputed statements that Brice made
to Dale were that Brice was "feeling bad," "his dad talked him in to
doing that," "he might have made a mistake," and "the guy [Johnny]
deserved it anyway." (Doc. 8, Ex. A4 at 491.) The disputed statement
that Brice made to Jamie was, "sis, you knew that we set mom up." (Id.
at 514.) Although these statements may seem self-incriminatory and
against Brice's penal interest, they do not meet the requirement of
reliability. Brice's statement to Jamie was made after he had been
drinking (id. at 513) and while he was talking about killing himself.
(Id. at 514.) In that context, Brice's statements were not credible or
reliable. Further, Brice's statements to Dale were followed by
statements saying that petitioner was caught "doped up in the bedroom"
and "it wasn't like he wasn't going to get busted anyway." (Id. at 491.)
In this context, Brice's statements were inconsistent and contradictory.

The disputed out-of-court statements were not sufficiently reliable. This factor of the <u>Chambers</u> test fails.

Second, the court must consider whether the statements were spontaneously made to a close acquaintance shortly after the crime occurred. Jamie, Brice's sister, would be considered a close acquaintance. However, the record isn't clear about when Brice made the statement to her. Jamie testified that Brice "didn't never [sic] talk about it until one day" (<u>id.</u> at 513), implying that the statement was not made shortly after the crime had occurred. Dale Crump could also be considered a close acquaintance. He knew Brice's father, they were neighbors for several years, and he knew Brice through his father. Dale testified that Brice spoke to him "three to four days" after the crime occurred. (<u>Id.</u> at 490-91.) The statements seem to be spontaneous because Brice came to Dale and they were talking about petitioner's situation. This court would probably determine that the statements to Dale met this factor, but that the statements to Jamie did not.

The third <u>Chambers</u> factor is that the statements were corroborated by other evidence in the case. Other evidence presented in petitioner's trial includes: Brice testified that he had planted the drugs in petitioner's residence (Ex. A3 at 395, 398, 408); Brice testified that he had cooked the drugs (<u>id.</u> at 400); Brice manufactured methamphetamine previously (Ex. A4 at 502); Brice was an informant for the police (<u>id.</u> at 458); at the time of the trial, Brice was incarcerated in Kentucky for stealing anhydrous ammonia (an ingredient of methamphetamine) (<u>id.</u> at 460); Sharon was addicted to drugs (<u>id.</u> at 465); and Brice brought some methamphetamine over to Dale Crump's house the day after petitioner's arrest or the next day after that. (<u>Id.</u> at 487). While the evidence shows that Brice was involved in the possession and manufacture of methamphetamine, it does not show that he framed petitioner without petitioner's knowledge. Brice's statements to Dale and Jamie are not corroborated by other evidence on the record.

Finally, even if the court found the <u>Chambers</u> factors were met, the statements were still properly not allowed, because the statements were not critical to petitioner's defense. According to Brice's testimony, he left the drugs in the bathroom (or on the kitchen sink). (Ex. A3 at

405.) However, the trial evidence was that the drugs were found in the bedroom. Brice did not know how the drugs got from the bathroom (or the kitchen) to the bedroom. (Id. at 406-08.) The transportation of the drugs from the bathroom (or the kitchen) alone would have been possession. Brice further testified that he did not plant the coffee filters, the plastic cup, and the aluminum foil, which all tested positive for controlled substance, in the bedroom. (Id. at 398, 405, 408-10.) There was enough evidence for a jury to find petitioner guilty of possession of a controlled substance. The out-of-court statements were not critical to petitioner's defense.

Petitioner contends that Dale's and Jamie's testimony about Brice's prior statements should have been allowed at trial to rehabilitate Brice after he was impeached by the prosecution. The Supreme Court has held that "a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive [is] admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it [is] inadmissible if made afterwards." Tome v. United States, 513 U.S. 150, 156 (1995). The Missouri Court of Appeals follows the same temporal requirement for allowing prior consistent statements into testimony. State v. McClendon, 895 S.W.2d 249, 252 (Mo. Ct. App. 1995). "Statements consistent with trial testimony given before the corrupting influence to falsify occurred are relevant to rebut a claim of contrivance." State v. Ramsey, 864 S.W.2d 320, 329 (Mo. 1993) (citing McCormick on Evidence, § 251 at 119 (4th ed. 1992)). The limitation on this rule is that prior consistent statements are not allowed if they constitute improper bolstering of a witness who has been discredited. Tome, 513 U.S. at 157. Improper bolstering occurs when all of a witness's prior consistent statements are already admitted in evidence or a witness's testimony is submitted over and over again. United States v. Ramos-Caraballo, 375 F.3d 797, 803 (8th Cir. 2004).

Petitioner argues that the trial court should have allowed the testimony of Dale and Jamie to rebut the charge of recent fabrication on Brice's part. Brice's original statements were those to Deputy Moore, which were used to obtain the search warrant, where he said that

he had seen 2 to 3 grams of methamphetamine in petitioner's residence. (Ex. A1 at 20-21, 42.)  Deputy Moore testified at the suppression hearing that Brice told him about the drugs because he was worried about his mother's safety.  (Id. at 42, 44.)  Brice also testified at the suppression hearing.  He said he didn't quite recall telling Deputy Moore that he had seen the drugs at petitioner's residence and, in fact, he had not seen drugs there at all ("Like I said, I don't recall saying that.  I mean, I'm not saying that I didn't say it or I did say it, but, I mean.").  (Id. at 80-82.)  Brice testified that he thought his mom was "looking pretty bad" and he "wanted her to get help."  (Id. at 84.)  He also said that he didn't recall telling Deputy Moore that petitioner told him that he was going to cook up a batch of dope on the 6th or 7th of February.  (Id. at 91.)

At trial, however, Brice testified that he gave Deputy Moore the information used in the search warrant affidavit (Ex. A3 at 403), but that he planted the drugs to set petitioner up.  Brice also testified that Deputy Moore didn't know that he was setting petitioner up.  (Id. at 404.)  Brice said that there was "no reason" for setting petitioner up, but "it was just wrong."  (Id. at 407.)  The prosecutor reminded Brice that he had testified earlier (at the suppression motion hearing) that he told Deputy Moore about the drugs because he was concerned about his mother.  (Id.)  Brice replied that he "just wanted his mother to get help."  (Id.)  The prosecutor asked Brice why he changed his story and Brice said, "when I talked to you last night, I told you, you asked me if I was planning on changing my story and at the time I wasn't, and then they put us in the cell with Johnny and we talked about it, and we talked about it."  (Id.)  The prosecutor asked Brice if petitioner changed his mind when they were in the cell together.  (Id. at 408.)  Brice answered that he didn't.  The prosecutor then repeated Brice's earlier testimony to impeach him.  ( Id. at 407-08.)

Brice's statements to Dale and Jamie did not occur until after petitioner's arrest.  (Ex. A4 at 491, 513-14.)  The charge of recent fabrication came from the prosecutor at trial; he implied that Brice had been put in a cell with Johnny the night before Brice testified and Johnny had made Brice change his story.  (Ex. A3 at 407.)  Temporally,

this fact pattern matches the federal standard set forth in <u>Tome</u>. The prior consistent statements to Dale and Jamie should have been admitted because they were made prior to the alleged fabrication. This is not a situation where the defense was trying to improperly bolster the witness's statement.

However, even if the trial court ought to have allowed the evidence, petitioner's case was not prejudiced. Even if the testimonies of Dale and of Jamie had been allowed, they would not have disproved the fact that petitioner possessed methamphetamine. Brice testified that he planted the drugs in petitioner's residence, which Jamie and Dale could have attested to, but Brice said he put the drugs in the bathroom (or the kitchen). Petitioner was arrested in the bedroom with the drugs, which means he (or someone in the residence) must have carried the drugs into the bedroom. Further, Brice testified that he did not plant the other items which tested positive for controlled substances in the bedroom. Since the trial court's ruling did not prejudice the defense, Ground 2 is without merit.

**Ground 3**

Petitioner contends he was denied due process when the trial court sustained the state's objections and did not let petitioner elicit impeaching testimony from Jamie Owens and Dale Crump that Jim Owens had told them that he framed petitioner with the help of Brice Owens. Respondent argues that petitioner fails to demonstrate that the Missouri Court of Appeals' findings in this regard are contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

"Ordinarily the admissibility of evidence at trial is a matter of state law and will not form the basis for habeas relief." <u>Turner v. Armontrout</u>, 845 F.2d 165, 169 (8th Cir.), <u>cert. denied</u> 488 U.S. 928 (1988). However, a federal court may "grant habeas relief when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." <u>Id.</u> Further, "[a] state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only

when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996), cert. denied, 520 U.S. 1171 (1997). As discussed in Ground 2, supra, the factors for admitting hearsay testimony at trial are set forth in Chambers: (1) each statement was against the declarant's penal interest; (2) each statement was spontaneously made to a close acquaintance shortly after the crime occurred; and (3) the statements were corroborated by other evidence in the case. Chambers, 410 U.S. at 300-01.

The Missouri Court of Appeals held the following on petitioner's direct appeal:

> "To impeach a witness with extrinsic evidence of prior inconsistent statements, the witness must be given an opportunity to refresh his or her recollection and to admit, deny, or explain the statement." State v. Boyd, 871 S.W.2d 23, 26 (Mo. App. 1993).
>
> *     *     *
>
> Jim was not expressly asked about any *inconsistent statement* that he allegedly made to either Dale or Jamie. Accordingly, he was not afforded the opportunity to "refresh his . . . recollection and to admit, deny, or explain the statement." . . . The trial court properly excluded extrinsic evidence of Jim's alleged prior inconsistent statements.

State v. Norville, 23 S.W.2d at 680 (internal citations and footnote omitted).[2]

Specifically, Jim Owens testified that: (a) he was not jealous of Sharon's relationship with petitioner (Ex. A3 at 441); (b) he thought Sharon's relationship with petitioner was an improvement over her last marriage (id. at 440); (c) he never told Dale Crump that he and Brice framed petitioner (id. at 450); (d) he never sent Crump to Wal-Mart to buy batteries and cold tablets (id. at 448); (e) he never told Crump

---

[2]Jim was, however, asked on direct whether he recalled if he said to Jamie, "I've tried and tried to get your mom help and this is the only way I could think to do it." (Doc. 8, Ex. F at 14.) Jim answered that "I probably would have said that, but now it might not be the way you're taking it." (Id.) Petitioner never attempted to present Jamie's testimony of this incident to the jury.

that he discussed framing petitioner and Sharon with the help of Deputy Moore so that he could get Sharon some help for her alleged drug problem (Ex. A4 at 458-59); and (f) he didn't know Brice was manufacturing methamphetamine in his shop on February 10, 1998. ( Id. at 463-64.)

Dale Crump was allowed to make offers of proof regarding conversations he had with Jim Owens. Dale offered that Jim gave him a $50 bill to get Sudafed and lithium batteries from Wal-Mart and told him to keep the $9 in change. (Ex. A4 at 489, 493.) Dale also offered that he talked with Jim after petitioner and Sharon were arrested ( id. at 489):

> Q: [Defense counsel] And what was the nature of that conversation?
>
> A: [Dale Crump] He told me that he [Jim] had went through with something, he might have made a mistake, he felt like, he, you know, it might not turn out like he thought and he told me what he did.
>
> Q: And what did he do?
>
> A: He had, had that made, and had it took out to their house and planted, and then called Keith Moore and told him, you know, it was there, that's, that's his, you know, what he told me, basically, his words.
>
> Q: He called Keith Moore and told him it was there?
>
> A: And he said that Keith Moore, didn't look like he was standing up to his end of the deal. He was supposed to have got Sharon help, she wasn't supposed to been in jail, had to get on bond and all that. She was supposed to go straight to Farmington, according to what he told me.

(Id. at 490.)

The court's ruling that petitioner was not allowed to impeach Jim's testimony was not unreasonable because Dale's statements do not meet the Chambers requirements. The statements Jim made to Dale were made spontaneously and to a close acquaintance shortly after the arrest occurred. However, while the statements could be considered self-incriminatory, they were not corroborated by other evidence in the case.

Jamie Owens testified that on February 9, 1998, Jim Owens answered the phone and handed it to Brice. (Id. at 499.) She also testified that she saw Brice take some "stuff" outside and that she looked in a

cooler and there was anhydrous ammonia in it. (Id. at 500.) On
February 10, 1998, Jamie didn't observe what Brice was doing most of the
day because "he was out in the shop most of the day and [Jim] told [her]
to keep the door closed." (Id. at 501.) When she did go out to the
shop, she saw Brice mixing up dope (methamphetamine). (Id. at 502.)
She also testified that Brice and Justin left on the four-wheeler
between 10 and 10:30 and were gone for 30-45 minutes. (Id. at 504.)
When Brice and Justin returned and were sitting out in the shop with Jim
and Jamie, the phone rang, Jim answered it and spoke to the person on
the phone. (Id.)

Jamie Owens was allowed to make an offer of proof regarding a
conversation she had with her father. The following testimony occurred:

> Q: [Defense counsel] And, can you tell us what the nature
> of your conversation with [Jim Owens] was?
>
> A: [Jamie Owens] Of, well, I kind of assumed that it was
> a setup deal and I wasn't talking to my dad, I was sad, my
> mom had went to jail, and, he asked me what was wrong,
> because he did not tell me that my mom had went to jail,
> him or Johnny, her or Johnny and he asked me what was
> wrong, and I told him, you know, what's wrong, and he
> said, about your mom going to jail and I said yes, and he
> said how did you know and I said Lewis told me, and he
> said well, sis, I hate it that she's there too, but he
> said, you know, I tried to get your mother help and I
> didn't know what else to do besides this, and that was his
> exact words.
>
> *   *   *
>
> Q: Did you ever hear your father, at any time, talk about
> Sharon and Johnny's relationship?
>
> A: Yes.
>
> Q: And what did he say concerning their relationship?
>
> A: Wasn't really concerned of the relationship. It's just
> how he couldn't stand Johnny, and, he wasn't nothing but
> a drughead and mom don't need to be with him, and this and
> that.

(Id. at 513-14.)

The state court ruling that petitioner could not impeach Jim Owens
with Jamie's offers of proof was reasonable because Jim's statements to

her do not meet the <u>Chambers</u> requirements.  The statements were made to a close acquaintance (his daughter) spontaneously and shortly after petitioner's arrest.  However, the statements were not against Jim's penal interest and they were not self-incriminatory.  Further, the statements are not corroborated by other evidence in the case.

Even if this court were to find that the state court was incorrect in not allowing petitioner to impeach Jim Owens with Dale's and Jamie's statements, petitioner would not be entitled to relief on this ground because the exclusion of the statements did not prejudice him. Petitioner was convicted of possession of methamphetamine.  Even if the impeaching testimony were allowed, petitioner cannot account for the fact that, again, Brice testified that he put the drugs on the bathroom sink (or kitchen sink), and petitioner was arrested, and the drugs were found, in the bedroom.  There was legally sufficient evidence for a rational trier of fact to convict petitioner of possession of a controlled substance.  Ground 3 is without merit.

**F.  Ineffective Assistance of Counsel Claims - Grounds 9 and 10**

Petitioner alleged ineffective assistance of counsel in his Rule 29.15 motion to the state court.  The trial court denied this motion and the Missouri Court of Appeals affirmed.  (Doc. 8, Ex. M at 6.)

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must satisfy the two-prong test set down by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The petitioner must show:  (1) that trial counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.  In order to prove the first prong of the test, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 688. However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ."  <u>Id.</u> at 689.  In order to prove the second prong of the test the petitioner must show the "existence of some factor that undermines a reviewing court's confidence in the verdict."  <u>Gray v. Bowersox</u>, 281 F.3d 749, 755 (8th Cir. 2002).

**Ground 9**

Petitioner contends in Ground 9 that he was denied effective assistance of counsel when trial counsel failed to object to the admission into evidence of the search inventory and photographs taken during the search, and appellate counsel failed to assert on direct appeal the court's error in admitting the exhibits into evidence. Respondent argues that petitioner failed to establish the deficient performance prong of Strickland.

The "performance of an attorney is not deficient for failure to object to **admissible** evidence." Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995) (emphasis in original) (internal quotation omitted). The admissibility of evidence under state law is a determination to be made by the state court. See id.

Petitioner argues that the photographs and the search inventory contained items that were not presented into evidence at trial and were irrelevant to the charge against him. However, the Court of Appeals, quoting the motion court, noted:

> [T]here is no showing that the disputed evidence, search inventory, and photographs were not admissible. The trial testimony revealed that the items mentioned could have been used in the manufacture and use of methamphetamine; the items had a nexus with [petitioner's] criminal behavior . . . . Even if it is assumed that an objection would have been sustained, there is no reasonable likelihood that the result of the trial would have [been] different.

(Doc. 8, Ex. M at 4.)

The Missouri state court determined that the evidence in question was admissible. Defense counsel was not deficient for failing to object to its admission. Petitioner fails to demonstrate either prong of the Strickland test -- he does not show that his trial counsel's performance fell below an objectively reasonable standard and he does not show that he was prejudiced as a result.

Because there was no basis for objection to the admission of the evidence at the trial court level, there was no basis for appellate counsel to raise the issue on appeal. Ground 9 is without merit.

**Ground 10**

Ground 10 alleges that petitioner was denied effective assistance of counsel when trial counsel failed to properly impeach Deputy Moore, given that the state's case was based significantly on Deputy Moore's investigation and testimony and such impeachment would have cast doubt on his credibility. More specifically, petitioner argues that, with respect to certain facts, Deputy Moore's trial testimony differed from his testimony at the suppression hearing, during his deposition, and in his affidavit for the search warrant. Respondent argues that petitioner failed to establish the deficient performance prong of Strickland.

Petitioner received an evidentiary hearing and the motion court ruled on this issue. It held that, "a review of the testimony given by Chief Deputy Moore in his deposition, at the motion to suppress hearing, and at trial, discloses no inconsistences that give rise to a reasonable doubt as to [petitioner's] guilt. The lack of such impeachment evidence is not a basis for [petitioner's] ineffective assistance claim." (Doc. 8, Ex. M at 6.)[3]

Petitioner's trial counsel did not act in a manner that fell below the objectively reasonable standard. The decision not to impeach a witness because of minor inconsistences could be considered sound trial strategy and as such would not form the basis for habeas relief. Further, petitioner does not show that counsel's behavior prejudiced his trial. A review of the record shows that, even if counsel had impeached the witness, a jury would still likely have found petitioner guilty of possession of a controlled substance. Ground 10 is without merit.

**E. Review for Plain Error - Grounds 5, 6, 7, 8, 11**

Petitioner failed to raise Grounds 5, 6, 7, 8, and 11 at trial. Nevertheless, the Missouri Court of Appeals reviewed these claims for plain error on direct appeal. (Doc. 8, Ex. F at 14-27.)

---

[3]The Missouri Court of Appeals noted, "the mere failure to impeach a witness does not automatically entitle a [petitioner] to post-conviction relief" and that "[a] [petitioner] must establish the impeachment would have provided a defense or changed the outcome of the trial." (Doc. 8, Ex. M at 6) (citations omitted).

When a state court conducts a plain error review, and the habeas petitioner clearly presented his claim to the state court in constitutional terms, the habeas court may also review for plain error. Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998). With plain error review, the habeas petitioner can prevail only by showing that "manifest injustice resulted" from the alleged errors. Mack v. Caspari, 92 F.3d 637, 641 (8th Cir. 1996) (quoting Blackmon v. White, 825 F.2d 1263, 1266 (8th Cir. 1987)), cert. denied, 520 U.S. 1109 (1997).

**Ground 5**

Petitioner contends in Ground 5 that his due process rights were violated when the trial court let the state present copious evidence concerning the methamphetamine manufacturing process, how methamphetamine is made, how methamphetamine labs are cleaned up, and how much it costs the county to clean up the labs. Petitioner presented this claim to the Missouri Court of Appeals in constitutional terms, so this court will exercise its discretion and review for plain error.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive [petitioner] of due process." Parker, 94 F.3d at 460. Further, "nothing in the Due Process Clause of the Fourteenth Amendment requires the State to refrain from introducing relevant evidence. . . ." Estelle, 502 U.S. at 70.

Petitioner contends that the admission into evidence of the jar of substance violated his right to due process because it was never tested for being a controlled substance, or even for its contents, and because it was never entered into evidence at trial. (Doc. 4, Supp. at 4-5.) However, because the Missouri Court of Appeals held that the evidence was relevant and petitioner does not show that "manifest injustice" resulted from its admission, this court cannot grant relief. Ground 5 is without merit.

**Ground 6**

Petitioner alleges in Ground 6 that he was denied due process when the trial court sustained the state's objection and did not let petitioner use a memo written by the prosecutor to impeach the testimony of law enforcement officers.  In addition, petitioner contends his due process rights were violated when the trial court did not sua sponte require the prosecution to correct the false testimony given by law enforcement officers at trial.  Petitioner presented this claim to the Missouri Court of Appeals in constitutional terms, so this court will exercise its discretion and review for plain error.

The trial court granted the prosecution's motion in limine prohibiting the defense from introducing a certain memo at trial.  The Missouri Court of Appeals, quoting <u>State v. Boyd</u>, 992 S.W.2d 213, 218 (Mo. App. 1999), noted that "[a] trial court's ruling granting a motion in limine is interlocutory only and subject to change during the course of the trial; such a ruling therefore, in and of itself, preserves nothing for appeal."  <u>State v. Norville</u>, 23 S.W.2d at 685.  The court also found that, "even if some law enforcement officer did hear a four-wheeler leave the scene and told the prosecutor, there is no evidence that the officers that testified at trial heard anything.  We find no manifest injustice or miscarriage of justice suffered by the [petitioner] due to the trial court's action."  (Doc. 8, Ex. F at 23-24.)

Petitioner argues that the "memo was particularly important and critical to the defense theory because Keith Moore testified that he was observing petitioner's home for hours before executing his warrant, the time defense witnesses testified as to their arrival and departure from petitioner's home, and the fact that Keith Moore himself had called off the assistance of East Prairie City Police shortly before executing his warrant without the knowledge of Sheriff Turley."  (Doc. 12 at 7-8.)

Petitioner speculates and draws conclusions that are not supported by the record.  He fails to show how the trial court's ruling "fatally infected" his trial and deprived him of due process.  Further, this court agrees with the Missouri Court of Appeals' finding that, even if

the defense did introduce the memo, there is no evidence that the law enforcement officers who testified actually heard the four wheeler leave petitioner's residence.  No basis for a determination of false testimony existed and sua sponte action by the court would have been improper.  Since a federal habeas court does not reexamine state court determinations of state law and petitioner fails to show that the ruling resulted in "manifest injustice," this court cannot grant relief.  Ground 6 is without merit.

**Ground 7**

Ground 7 contends that petitioner's due process rights were violated and the trial court erred, resulting in manifest injustice, by letting the state argue in summation that "[petitioner] seems to come up with every answer possible as to all the evidence.  How can he do that?  Because he's had all this time to make up his story as to every fact and every evidence [sic] the State has."  (Doc. 8, Ex. A5 at 672.)  Petitioner presented this claim to the Missouri Court of Appeals in constitutional terms.  So this court will exercise its discretion and review for plain error.

When a defendant testifies at his own trial, he becomes a witness, subject to questions from the prosecution regarding his credibility.  See Portuondo v. Agard, 529 U.S. 61, 69 (2000).  As such, "his credibility may be impeached and his testimony assailed like that of any other witness."  Id. (quoting Brown v. United States, 356 U.S. 148, 154 (1958)).

While a prosecutor's closing argument may not deprive the petitioner of a fair trial, the Supreme Court has held that a prosecutor may remind the jury that a petitioner had the benefit of listening to all the other witnesses before he testified and that such an argument does not deprive the petitioner of due process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Portuondo, 529 U.S. at 64.  The closing argument, however, may not "manipulate or misstate evidence" and it may not implicate "other specific rights of the accused such as the right to counsel or the right to remain silent."  Darden, 477 U.S. at 182.  The habeas court may examine the prosecutor's closing argument to see if it was "fundamentally unfair so as to offend [a petitioner's] due

process rights." Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir.), cert. denied, 516 U.S. 842 (1995).

Here, the prosecutor's argument did not violate petitioner's due process rights. He informed the jury that the petitioner had the advantage of hearing all the other witnesses' testimony and possibly tailoring his own testimony accordingly. However, because petitioner testified and he was subject to the same credibility assessment as all the other witnesses, the jury would have already taken this into account. In fact, the jury was instructed to evaluate all the witnesses' credibility. In "Instruction 1" the court said:

> In determining the believability of a witness and the weight to be given to testimony of the witness, [the jury] may take into consideration . . . the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

(Doc. 8, Ex. B at 53.)[4]  Since the prosecutor's argument stated something the jury was supposed to consider anyway, his argument was not unconstitutional. Ground 7 is without merit.


**Ground 8**

Petitioner contends in Ground 8 that his due process rights were violated and the court erred in letting the state introduce evidence that on the night of his arrest petitioner had long hair, tarnished looking clothes, and a very scraggly appearance. Petitioner argues that his appearance at the time of arrest was irrelevant to any issue at trial and was more prejudicial than probative. Petitioner presented this claim to the Missouri Court of Appeals in constitutional terms, so this court will exercise its discretion and review for plain error.

---

[4]Further, the court reminded the jury that the attorneys' closing arguments were not evidence, but merely an aid to help the jury understand the law. (Doc. 8, Ex. at 60.)

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive [petitioner] of due process." Parker, 94 F.3d at 460.

The testimony petitioner contests did not fatally infect the trial and deprive him of due process. The testimony was offered in conjunction with evidence connecting petitioner with the use and possession of methamphetamine. The state court's evidentiary ruling was not so prejudicial as to warrant relief. Ground 8 is without merit.


**Ground 11**

Petitioner contends in Ground 11 that his conviction was obtained by the use of evidence gained pursuant to an unconstitutional search and seizure because Deputy Moore's affidavit for the search warrant contained numerous false statements, which were knowingly and intentionally included in the affidavit. Petitioner presented this claim to the Missouri Court of Appeals in constitutional terms.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976).

Here, the state provided petitioner with an opportunity for full and fair litigation of his Fourth Amendment claim. Prior to petitioner's trial, defense counsel filed a motion to suppress evidence. (Doc. 8, Ex. B at 23.) The trial court held a hearing on the motion to suppress on November 15, 1998, and subsequently overruled it. (Id. at 3.) Petitioner also contested the evidence obtained by the search and seizure on direct appeal, but the Court of Appeals denied his claim. [5]

---

[5]The Missouri Court of Appeals found the remaining, unchallenged statements contained in the affidavit still provided sufficient probable cause for a search warrant. (Doc. 8, Ex. F at 22.)

(Doc. 8, Ex. F at 22-24.)  Since petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, federal habeas relief may not be granted.  Ground 11 is without merit.

The petition of Johnny Norville for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be dismissed without further proceedings.  Any pending motions will be denied as moot.  An appropriate order is issued herewith.

**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 9, 2005.